IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CURTIS C. PHILLIPS, JR. | : | CIVIL ACTION |
| | : | NO. 14-5086 |
| v. | : | |
| | : | |
| JOHN C.THOMAS, et al. | : | |

O'NEILL, J.                                                                          March 3, 2016

## MEMORANDUM

Now before me is a motion to dismiss, or in the alternative, for summary judgment with respect to the claims set forth in the second amended complaint of plaintiff Curtis C. Phillips, Jr., who is proceeding pro se. Dkt. No. 13. The motion is brought on behalf of defendants John Thomas, Michael Criscitello, Samuel Allen, Major Aponte, Captain Morris, Corrections Officer Coons, Lt. Thompson, Lt. B. Adams, Corrections Officer Colon, Sgt. Spells, Ms. Williams, Ms. Morales and Corrections Officer McClain.[1] Dkt. No. 21. Also before me is plaintiff's response thereto. Dkt. No. 22. For the reasons that follow, I will grant in part and deny in part defendants' motion.

## BACKGROUND

Plaintiff is presently an inmate at the State Correctional Institution at Chester. In his lengthy second amended complaint, plaintiff breaks his allegations into five "claims." Dkt. No. 13. The first four claims complain about: (1) plaintiff's diet; (2) plaintiff's access to medical care; (3) alleged tampering with plaintiff's legal mail; and (4) the alleged use of excessive force

---

[1]      Defendants have not moved to dismiss plaintiff's claims against against "six John Doe cert team members, one John Doe lieutenant, and head kitchen supervisor John Doe. The "[u]se of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified. If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." Blakeslee v. Clinton Cnty., 336 F. App'x 248, 250 (3d Cir. 2009) (citations omitted).

by prison guards.  Plaintiff's fifth claim does not present a separate complaint, but rather provides additional allegations in support of his four other claims.

In plaintiff's first claim, he alleges that "on June 11th, 2014, during [his] intake to the prison, an officer 'Coons' took [his] state issued diet card and refused to return it to [him] . . . ." Dkt. No. 12 at ECF p. 3.  Plaintiff alleges that, "as a result, [he] did not receive a meal for three days until the 14th of June, 2014, when [he] was finally provided a 'temporary diet card.'"  Id. Plaintiff asserts that after he received a diet card, "on or about June 24, 2014, the kitchen staff began to refuse to honor [his] diet, providing [him] with allergen based foods and foods containing allergens which [he] could not eat."  Id.  He alleges, however, that "the kitchen supervisor has told the floor officers repeatedly that [his] food is allergen free."  Id. at ECF p. 12. He complains that "sometimes [his] meals are sabotaged – onions and peppers hidden inside, sometimes cooked with onions and peppers which have been removed later."  Id. at ECF p. 3. Plaintiff contends that he receives no meals, or that he receives the same tray twice, or that sometimes his "food items are sent on other diet trays to different inmates while [he] is given soy based foods or objects like a bean paste burger which is made of soy beans."  Id.  He asserts that he has been told "that the soy based hot dogs, kielbasas, burgers, etc. are chicken" with no confirmation from the culinary department.  Id.  Plaintiff alleges that "occasionally [he] receive[s] the proper meal plan . . . .  However, it is not enough to keep [him] sustained and only lasts a day or two before it is back to the same stuff that [he] can't eat."  Id.  He asserts that "every day [he is] provided a grossly inadequate or not nutritionally balanced meal – most days only bread and fruit" and that "at one point, [he] received eggs for lunch and dinner several days in a row – as well as for breakfast."  Id.  Plaintiff alleges that the "head kitchen supervisor has deprived [him] of adequate nourishment . . . " and that "the items which [he] can eat are of a

grossly inadequate quantity." Id. at ECF p. 16-17.

Plaintiff claims that he has informed his block officers about his dietary issues, along

with

> Lieutenant Thompson, Lieutenant Crisotello, Lieutenant Allen,
> Captain Morris, Sargent Book, Sargent Spells, C.O. Colon, C.O.
> Roper, C.O. Meshe, C.O. Duncan, C.O. Page, C.O. Freeman, C.O.
> Posada, C.O. Prosser, [his] counselor Ms. Daniels, the 'PRC'
> Woman Ms. Williams, C.O. Baker, as well as every other floor
> officer or superior that [he] has come in contact as well as
> Lieutenant B. Adams and Lieutenant Eggleston.

Id. at ECF p. 11.  He alleges that he has "written at least two letters, appealled [sic] at least two

gr[ie]vances [sic] and spoken directly [on] at least three sep[a]rate occasions to the

superintend[e]nt and ha[s] still gotten no where [sic]."  Id.  He alleges that "the only superior to

help me to date has been Lieutenant Eggleston."  Id.  at ECF p. 11.  Plaintiff also alleges that

"the deficiencies of the culinary department at SCI Chester have been brought to the attention of

Superintendent John C. Thomas on numerous occasions and in failing to correct the issues

therein, or to respond to them in a manner sufficient as to deter misconduct, Mr. Thomas is

thereby subjecting [him] to this deprivation willfully."  Id. at ECF p. 17.

In his second claim, plaintiff alleges that, starting "around July 29th, 2014," due to what

he "know[s] to be an allergic reaction to peppers and soy based food products," he "started to

develop[ ] large sores and welts which are extremely painful and which bleed and ooze

liquid/puss profusely."  Id. at ECF p. 12.  He claims that he "received no treatment for this . . . ."

Id.  The only defendant who plaintiff specifically identifies in conjunction with his second claim

is "a doctor named 'Harewomb.'"  Id. at ECF p. 13.  Plaintiff contends that "on at least three

separate occasions, [he] requested medical care and weight and vital checks which [he] was

denied by a doctor named 'Harewomb.'"  Id. at ECF p. 12-13.  Plaintiff contends that he

received the first weight and vital check that he requested, but "when the medical department started to realize that he was quickly losing weight and trying to keep a record of it, [he] started being refused the weight and vital checks" and that he "began to be denied treatment altogether" "shortly thereafter . . . ." Id. at ECF p. 13.  Plaintiff alleges that "most of these acts" – acts related to the alleged deliberate indifference to his medical needs – "occurred at times when [he] was unable to secure grievance forms – later than August 27th, 2014, so [he] was not able to raise these issues in grievances via the facility's grievance forms." Id. at ECF p. 25.

In plaintiff's third claim, he alleges that "shortly after [he] filed suit in this matter and the prison received the application for [in] forma pauperis status . . . the prison officials began to at least hold [his] outgoing legal mail and likely have opened it and even altered the contents." Id. at ECF p. 13.  Plaintiff alleges that "several pieces of legal mail clearly marked from an attorney and/or from a courthouse have been opened by staff not in [his] presence and some has been held for days at a time." Id.  In particular, he claims that "on August 16th, 2014, [his] attorney mailed [him] several things, mostly documents related to [his] currently binding sentence which [he is] appealing, transcripts, records, reports, etc." Id.  He claims that he "did not receive this until August 22nd, 2014" and that the mail had been "opened" and was in "envelope[s] other than what they had been mailed in . . . ." Id.  Plaintiff contends that he has "identified at least fourteen instances of his legal mail being opened or otherwise tampered with . . . ." Id. at ECF p. 14.  Plaintiff's second amended complaint does not specifically identify any defendants who he believes to be responsible for the alleged tampering with his legal mail.

Plaintiff alleges that he filed a grievance related to the alleged tampering with his mail on August 27th, 2014 and also complained that he "was being charged for [his] legal mail which the lieutenants at Camp Hill informed [him] was supposed to be free while [he] was in the custody

of the Pennsylvania Department of Corrections." Id. at ECF p. 25.  He alleges, however, that on

September 9th, 2014, this grievance "was returned because [he] had not written in [his] inmate

number  . . . and at this time [he] filled in the number and placed the gr[ie]vance back into the

mail system." Id.  He alleges that "to date [he] ha[s] not received a response to this gr[ie]vance

at all." Id.  He also asserts that he has "been denied grievances since about August 27th, 2014,

and therefore [has] been unable to gr[ie]ve this issue any further." Id.

In plaintiff's fourth claim, he contends that on July 15, 2014, he "was attacked by several

guards in riot gear and assaulted despite being compliant with orders to 'turn around and be

restrained.'" Id. at ECF p 14.  Plaintiff alleges that "at least four guards began to kick, strike,

pull, push and beat [him] with shock shields while [his] back was to them and [his] hands were

behind [his] back to be handcuffed." Id.  Plaintiff claims that "prior to this an officer twisted

[his] wrists extremely violently and placed handcuffs on [him] extremely tight" and that "at no

time during these actions was [he] doing anything at all which would have warranted these

actions . . . ." Id.  at ECF  p. 14-15.  Plaintiff alleges that he has "been informed that this event

was fueled by several grievances [he] had written about the issue related to [his] food situation

and [the] refusal of officers to intervene in [his] starvation." Id. at ECF p. 15.  In a letter attached

to his second amended complaint, plaintiff claims that on the day of the alleged attack, he was

"forced to go to medical despite putting in no requests . . . after being threatened by a "Sgt.

Book" and a C.O. Privott." Dkt. No. 12 at ECF p. 37.  He claims that he "was drug into medical

[sic], assaulted, and ultimately put in segregation on false charges of assaulting an officer." Id.

In another document attached to his second amended complaint, plaintiff instead claims that

"C.O. Privott and Sgt. Book "threatened to 'take me to the hole' if I did not report to medical"

and that "this threat prompted me to grab my I.D. card and head to medical on my own

recognizance." Id. at ECF p. 40. He claims that while he was on his way to medical, "the two

men grabbed me, forced me to the medical lobby and assaulted me." Id. He claims he then told

Major Aponte what happened but that he "believe[s] Major Aponte informed the men to cover

for their actions." Id.

Plaintiff alleges that he "submitted four grievances related to the assertions contained

within claim four" on July 15, 2014, but that he has received "no response to date at all, nor any

acknowledgement that these forms were received though they certainly were." Id. at ECF p. 25.

Plaintiff also claims that he has "submitted many letters to both the facility manager related to

this incident as well as to central office and prison administration which have gone ignored to

date." Id. at ECF p. 26. Plaintiff alleges that he has "been the subject of an official cover up."

Id. at ECF p. 27.

As relief for defendants' alleged wrongs, plaintiff seeks "a preliminary injunction

ordering the facility to make all items on commissary available to [him] at cost of the facility as

it is necessary to ensure that [he is] fed adequately . . . ." Dkt. No. 12 at ECF p. 5. Plaintiff also

seeks "$5,000 a day compensatory damages due to the results on his health" and "the damage to

[his] mental state, defamation, etc." from defendants' alleged failure to provide him with "the

medically ordered diet which [he] require[s]." Id. Plaintiff also seeks $1,250 [in] punitive

damages . . . per day for the recorded days when [he has] been deprived a meal." Id. at ECF p. 6.

He asks for $1,000 in compensatory damages and $250 punitive for each instance of tampering

with [his] mail in the fourteen occasions [he] has identified." Id. Plaintiff also demands $3,500

a day for the unjust time spent in segregation for the 210 days which [he] received. Id. Also,

plaintiff seeks $250,000 for the damages caused by the assault, wrist twisting and excessively

tight handcuffing and lost wages [he] will face due to them as a landscaper/light construction

worker."[2] Id.

## DISCUSSION

### I.   Official Capacity Claims

Defendants argue that the Eleventh Amendment and Will v. Michigan Department of State Police, 491 U.S. 59 (1989), bar plaintiff's 42 U.S.C. § 1983 claims against the Commonwealth defendants in their official capacities.[3] Dkt. No. 21 at ECF p. 9-11.  Plaintiff responds that "the Commonwealth has expressly consented to be held accountable where the actions complained of are of a willful and intentional nature, as well as where the misconduct arises out of medical professionalism and/or care, custody or control of personal property."  Dkt. No. 22 at ECF p. 2.

To the extent Plaintiff seeks monetary damages against defendants in their official capacities, those claims must be dismissed as barred by the Eleventh Amendment.  The Eleventh

---

[2]   Rule 5.1.1 of the Local Rules of Civil Procedure provides that "no pleading asserting a claim for unliquidated damages shall contain any allegation as to the specific dollar amount claimed, but such pleadings shall contain allegations sufficient to establish the jurisdiction of the Court."  E.D. Pa. Local R. Civ. P. 5.1.1.  Because the Court's jurisdiction in this case is based on the existence of a federal question, plaintiff need not plead a specific amount-in-controversy.  Accordingly, any amended complaint shall not include a request for a specified amount of damages.

[3]   Because Eleventh Amendment immunity deprives a court of subject matter jurisdiction, a motion to dismiss based on Eleventh Amendment grounds "may properly be considered a motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 694 n.2 (3d Cir. 1996).  Plaintiff bears the burden of persuasion when subject matter jurisdiction is challenged, but the legal standard for surviving a Rule 12(b)(1) motion is a low one.  Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  "A claim may be dismissed under Rule 12(b)(1) only if it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000) (citation omitted).  Nevertheless, "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  Kulick v. Pocono Downs Racing Ass'n, 816 F.2d 895, 899 (3d Cir. 1987), quoting Oneida Indian Nation v. Cnty. of Oneida, 414 U.S. 661, 666 (1974).

Amendment of the U.S. Constitution provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  Under Will, 491 U.S. at 64, 70-71, plaintiff's claims against defendants in their official capacities are in fact claims against the State.  Thus, absent application of an exception, the Eleventh Amendment bars plaintiff's official capacity claims against defendants.

"Eleventh Amendment immunity is . . . subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law."  Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).  The first two exceptions do not apply here.  Congress did not abrogate Eleventh Amendment immunity when it enacted § 1983.  See Quern v. Jordan, 440 U.S. 332, 345 (1979).  Further, Pennsylvania has not waived its Eleventh Amendment immunity.  1 Pa. Cons. Stat. Ann. § 2310.  Thus I will dismiss plaintiff's claims for monetary relief against defendants to the extent that he asserts his claims against defendants in their official capacity.[4]  See Beckett v. Pa. Dep't of Corr., No. 14-3656, 2015 WL 75258, at *1 (3d Cir. Jan.7, 2015) (finding that the District Court correctly held that the Eleventh Amendment barred [the plaintiff's] claims for money damages against Department of Corrections [ ] defendants in their official capacities).

To the extent that the Eleventh Amendment does not bar plaintiff's claims against defendants in their individual capacity or his claims for prospective declaratory or injunctive

---

[4]     Courts "should freely grant leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a).  However, plaintiff may not re-assert his claims against defendants in their official capacity in any amended complaint because "the complaint, as amended, would fail to state a claim upon which relief could be granted" and granting leave to amend would thus be futile.  Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

relief, defendants also move to dismiss plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.  Dkt. No. 21.  I next consider whether any of these claims are sufficient to withstand defendants' motion.

## II.     Exhaustion of Administrative Remedies

"[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time."  Small v. Camden Cnty., 728 F.3d 265, 270 (3d Cir. 2013) (citation and internal quotation omitted).  The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies before bringing an action regarding prison conditions.  42 U.S.C. § 1997e(a).  Defendants argue that "[a]t the time plaintiff filed his Complaint on September 3, 2014, plaintiff had failed to exhaust a single grievance, properly or otherwise."  Dkt. No. 21 at ECF p. 16.  In response, plaintiff argues that "the grievance system was structured in such a way as to render the grievance process unavailable." Dkt. No. 22 at ECF p. 4.

### A.     Whether to Convert Defendants' Motion to a Motion for Summary Judgment

Defendants request that "[i]f the Court does not find plaintiff's claims unexhausted based upon the pleadings, . . . the declaration [of Louisa Perez, attached to their motion as Exhibit A,] be considered and the motion be converted to one for summary judgment.[5]  This Court has discretion to either convert plaintiff's motion to dismiss into a motion for summary judgment, or to ignore the matters presented outside the pleadings and continue to treat the filing as a motion

---

[5]     Rule 12(d) of the Federal Rules of Civil Procedure provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d) (emphasis added).

to dismiss.  See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) ("A trial judge has the discretion to consider evidence outside the complaint in ruling on motions to dismiss."); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion (3d ed. 2015) ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").

The Court of Appeals for the Third Circuit has emphasized the importance of notice requirements in the context of converting a motion to dismiss into a motion for summary judgment, particularly when a plaintiff is a pro se prisoner.  See Renchenski v. Williams, 622 F.3d 315, 340 (3d Cir. 2010) ("adequate notice in the pro se prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit"); see also Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013) ("when a court acts on its own in a way that significantly alters a pro se litigant's rights – for example, by converting one type of motion into a different type of motion – the court should inform the pro se party of the legal consequences").  Although defendant's motion was styled as a motion to dismiss, or in the alternative, a motion for summary judgment, and although plaintiff acknowledges the declaration of Ms. Perez which was submitted with defendant's motion, see Dkt. No. 22 at ECF p. 9, plaintiff has not been provided with all of the notice that Renchenski requires.

Further, it has been suggested that a "court should not convert a motion to dismiss into a motion for summary judgment when little discovery has taken place."  Bobo v. Wildwood Pub.

Sch. Bd. of Educ., No. 13-5007, 2014 WL 7339461, at *4 (D.N.J. Dec. 23, 2014) (citation omitted).  At this stage in plaintiff's case, little or no discovery has been exchanged (other than through the exchange of documents which have been attached to plaintiff's filings and defendants' motion).  Before converting defendants' motion to a motion for summary judgment, the Court should "afford [the] nonmoving party an opportunity to obtain any necessary discovery to adequately oppose the motion for summary judgment."  Tripodi v. Coastal Automation LLC, No. 06-4071, 2007 WL 2844908, at *3 (E.D. Pa. Sept. 26, 2007); see also Verbanik v. Harlow, 441 F. App'x 931, 935 (3d Cir. 2011) ("the District Court erred in considering matters outside the pleadings without advising the parties that defendants' motion would be treated as a summary judgment motion and providing [the plaintiff] an opportunity to present his own affidavit in response"); Breeland v. Baker, 439 F. App'x 93, 95 (3d Cir. 2011) (finding the district court erred by converting the defendants' motion into a motion for summary judgment where the plaintiff was not given notice of the intention to convert a motion to dismiss  and the plaintiff "argued that he had indeed appealed all the way to" exhausting his administrative remedies); Livingston v. Appel, No. 11–2764, 2014 WL 6860539, at *3 (E.D. Pa. Dec. 5, 2014) (declining to grant the defendant's motion to dismiss or to convert the defendant's motion into a summary judgment motion and ordering "the parties to take discovery initially on the issue of exhaustion of administrative remedies within sixty days, with leave for [the] Defendants to renew their motion for summary judgment on this issue at the end of the sixty-day period").  Accordingly, I will not convert defendants' motion and in reaching my decision I will not here rely on any documents submitted by defendants that were not attached to plaintiff's complaint.

## B.    Standard of Review

"In appropriate cases, failure to exhaust may be raised as the basis for a motion to

dismiss." <u>Brown v. Croak</u>, 312 F.3d 109, 111 (3d Cir. 2002).  To survive defendants' motion to dismiss pursuant to Rule 12(b)(6), plaintiff's second amended "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), <u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  In evaluating defendants' motion, the Court must separate the legal and factual elements of plaintiff's claims, accept the well-pleaded factual allegations as true and disregard any legal conclusions.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.2009).  The Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  <u>Id.</u> at 211, <u>quoting</u> <u>Iqbal</u>, 556 U.S. at 679.  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  <u>Id.</u> at 679, <u>quoting</u> Fed. R. Civ. P. 8(a)(2).  Where, as here, plaintiff is proceeding pro se, I have "an obligation to construe the complaint liberally."  <u>Giles v. Kearney</u>, 571 F.3d 318, 322 (3d Cir. 2009).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim."  <u>Mala</u>, 704 F.3d at 245.

### C. Whether Plaintiff Has Sufficiently Alleged Exhaustion

"Exhaustion is an affirmative defense that the defendant must plead and prove." <u>Breeland</u>, 439 F. App'x at 95, <u>citing</u> <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007); <u>see also</u> <u>Ray v. Kertes</u>, 285 F.3d 287, 295 (3d Cir. 2002) (holding that failure to exhaust is an affirmative defense and finding that the district court erred in imposing an improperly heightened pleading standard that required the prisoner not only to plead, but also to prove, exhaustion in the

complaint).  "[A] court may dismiss claims if the complaint is clear on its face that the plaintiff did not exhaust available administrative remedies." Livingston, 2014 WL 6860539, at *3, citing Jones, 549 U.S. at 214-15.  Importantly, "'[a]vailable' means 'capable of use; at hand.'" Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002).  "[I]f a prison official thwarts a prisoner's ability to exhaust his administrative remedies, those remedies are not considered available  . . . ." Spada v. Martinez, 579 F. App'x 82, 85 (3d Cir. 2014), citing Brown, 312 F.3d at 113.

Plaintiff alleges that he has "been denied grievance forms since about August 27th, 2014."[6] Dkt. No. 12 at ECF p. 25.  In his response to defendants' motion, plaintiff asserts that "it is for nothing more than want of grievance forms that [his claims] were not complained of," explaining that "in the event that I was able to a[c]quire a grievance form, I was forced to weigh the benefits of filing associated with each of my problems which naturally the issues regarding my food situation were in command of."  Dkt. No. 22 at ECF p. 6-7.  Defendants argue that "[p]laintiff's claim that he was unable to secure grievance forms is contradicted by the

---

[6]      In Pennsylvania state correctional institutions, inmates must follow a three-step grievance procedure prior to bringing suit in federal court.  See Johnson v. Townsend, 314 F. App'x 436, 441 (3d. Cir. 2008).  The procedure is outlined in Pennsylvania Department of Corrections Administrative Directive 804 (DC-ADM 804).

> The first step in the inmate grievance process is the initial review. Grievances must be filed within 15 working days of the event on which the grievance is based. . . . An inmate who is dissatisfied with the initial review decision is permitted to appeal to the Superintendent. . . .  Prior to December 8, 2010, appeals were to be filed within 10 working days, however, pursuant to an amendment to Department policy, this time period was extended in December 2010 to 15 working days. . . . An appeal to final review may be sought through the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") by filing an appeal to that office within 15 working days of the date of the Superintendent's decision.

Overly v. Garman, No. 12-0832, 2014 WL 356578, at *4 (M.D. Pa. Jan. 31, 2014) aff'd, 599 F. App'x 42 (3d Cir. 2015).

[grievances which they cite in their brief] which apparently [plaintiff] filed on a continuous

basis." Dkt. No. 21 at ECF p. 18.  Because I will not convert defendants' motion to a motion for

summary judgment, I will not here consider the documents which plaintiff has not attached or

specifically addressed in his pleadings.  But even if plaintiff has not sufficiently alleged that he

was denied access to grievance forms, construing the allegations in plaintiff's complaint and its

attachments in the light most favorable to him, I cannot say that "the complaint is clear on its

face that the plaintiff did not exhaust available administrative remedies." Livingston, 2014 WL

6860539, at *3.

    This is because plaintiff also argues that his "many appeals . . . appear to have simply

been disregarded by staff . . . ." Dkt. No. 22 at ECF p. 9.  In particular, he alleges that "on July

19th, 2014, I wrote a letter outlining the issues which I was dealing with to prison administration

which I received no response to . . . ." Dkt. No. 12 at ECF p. 24.  He alleges that he wrote

"another letter to the facilities central office" on August 31, 2014, but it was "mailed back to"

him." Id.  Plaintiff alleges that he "filed a grievance related to the tampering with [his] mail by

the mailroom" on August 27, 2014, that this grievance was returned to him because he had not

filled in his inmate number. Id. at ECF p. 25.  He claims that although he then did so and placed

the grievance back in the mail, "to date [he] ha[d] not received a response to this grievance at

all." Id.  Plaintiff also contends that "on July 15th , 2014, [he] submitted four grievances related

to the assertions contained within claim four" but that as of the date of his amended complaint,

he "received no response . . . at all, nor any acknowledgement that these forms were received

though they certainly were." Id.  This District has held that where a plaintiff submits a grievance

and does not receive a response, he has exhausted his available administrative remedies. See

Brown v. Lewis, 865 F. Supp. 2d 642, 646–47 (E.D. Pa. 2011); Carter v. Morrison, No. 06-

3000, 2007 WL 4233500, at *7 (E.D. Pa. Nov. 28, 2007).  Accordingly, I decline to find that plaintiff's failure to exhaust his administrative remedies warrants dismissal of his claims against defendants.

### III.   Whether Plaintiff Has Sufficiently Alleged His Claims Pursuant to Rule 12(b)(6)

To successfully state a claim against any of the defendants for a violation of his constitutional rights pursuant to 42 U.S.C. § 1983, plaintiff must allege that: (1) the conduct complained of was committed by a person acting under color of state law; and, (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States.  See Rehberg v. Paulk, ––– U.S. ––––, ––––, 132 S. Ct. 1497, 1501, 182 L.Ed.2d 593 (2012).  To withstand defendants' motion to dismiss, plaintiff must also allege personal involvement on the part of the defendants with "allegations of personal direction or actual knowledge and acquiescence."  Evancho v. Fisher, 423 F.3d 437, 353 (3d Cir. 2005).  "Allegations of participation or actual knowledge and acquiescence . . .  must be made with appropriate particularity."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998) (citations omitted).

### A.   Claim 1:  Plaintiff's Diet

Plaintiff's second amended complaint can be construed as asserting a claim that defendants acted with deliberate indifference in violation of his rights under the Eighth Amendment by allegedly refusing to adhere to a medically prescribed diet plan, specifically a diet which is free from peppers, onions or soy.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976) (holding that the Eighth Amendment protects prisoners from deliberate indifference by prison officials to their serious medical needs).  In order to state a prima facie case for unconstitutional deprivation of adequate medical care plaintiff must allege:  1) a sufficiently serious medical need

and 2) defendants' deliberate indifference to that serious medical need.  Monmouth Cnty. Corr.
Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987).  Plaintiff can allege deliberate
indifference on the part of defendants by alleging facts which show that they had knowledge of
his serious need for a medically prescribed diet and that they intentionally refused to provide him
with this diet, delayed access to the diet for a non-medical reason or otherwise prevented him
from receiving the diet.  See Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  In order to
find deliberate indifference "the official must both be aware of facts from which the inference
could be drawn that a substantial risk of serious harm exists, and he must also draw the
inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Defendants argue that plaintiff's claim with respect to his diet fails "because he does not
allege any facts supporting a claim that the defendants acted with deliberate indifference . . . ."
Dkt. No. 21 at ECF p. 23.  They assert that "defendants had no reason to believe or actual
knowledge that the food plaintiff was receiving was not according to a medically prescribed diet
plan."  Id.  In support of their motion, defendants point to several responses to plaintiff's
grievances regarding his diet which were attached to plaintiff's initial complaint.[7]  Dkt. No. 21 at
ECF p. 23.  On July 16, 2014, plaintiff's June 29, 2014 grievance was denied because, although
"[t]he Culinary department at SCI Chester is required to follow all diets that are sent from the
[Department of Corrections]" and plaintiff had not been identified as having a special diet.  Dkt.
No. 1 at ECF p. 19.  Plaintiff was directed to "contact medical as soon as possible to get

---

[7]      "To decide a motion to dismiss, courts generally consider only the allegations
contained in the complaint, exhibits attached to the complaint and matters of public record."
Pension Ben. Guar. Corp v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).
"[A]n exception to the general rule is that a document integral to or explicitly relied upon in the
complaint may be considered without converting the motion [to dismiss] into one for summary
judgment."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)
(citation and internal quotations omitted).

evaluated by the medical department for [his] diet." Id.  On August 5, 2014, plaintiff received a

response denying his grievance of July 28, 2014, which explained that "[a]t this present time I

have check[ed] with the DOC Food Service Department and there is no record of your diet.

Inmate Phillips you must be evaluated by the medical staff in order to be put on the diet you

request." Dkt. No. 1 at ECF p. 25.  A subsequent grievance was rejected on August 12, 2014

because it presented issues that had "been reviewed and addressed" in the August 5, 2014

grievance response.  Id. at ECF p. 27.

      Even assuming arguendo that plaintiff has alleged a sufficiently serious medical need, I

find that plaintiff's second amended complaint fails to state a claim because it does not assert

facts showing that each (or any) named individual defendant acted with deliberate indifference in

denying plaintiff access to a medically prescribed diet.  See Iqbal, 556 U.S. at 676 ("Because

vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the

Constitution").  To establish deliberate indifference, plaintiff must set forth facts "show[ing] that

the official was subjectively aware" of plaintiff's allergy to soy, peppers and onions and failed to

reasonably respond to his claims regarding his dietary needs.  Farmer v. Brennan, 511 U.S. 825,

829 (1994).  Plaintiff alleges that "kitchen staff began to refuse to honor [his] diet," that he made

"multiple attempts to correct the situation through floor officers, lieutenants, captains, and a

major" and that he "wrote letters to the superintend[e]nt.  Dkt. No. 12 at ECF p. 3.  Even if

plaintiffs allegations are sufficient to demonstrate that any of the defendants had knowledge of

his alleged prescribed diet, plaintiff does not allege any facts giving rise to an inference that any

of the defendants participated in or in any way acquiesced in the provision of non-compliant

foods to plaintiff.  Accordingly, plaintiff's second amended complaint fails to state a claim with

respect to his diet.  His claim will be dismissed with leave to amend to the extent that plaintiff is

able to sufficiently allege that a diet free from soy, peppers and onions was medically necessary

and that each defendant acted with deliberate indifference in denying him access to this diet.

      **B.**      **Claim 2:  Plaintiff's Other Medical Needs**

      Plaintiff's second amended complaint can also be construed as asserting a claim that

defendants acted with deliberate indifference in violation of his rights under the Eighth

Amendment by denying him adequate medical care for the allergic reactions he claims to have

suffered as a result of defendants' alleged failure to provide him with an allergen-free diet.

Specifically, plaintiff alleges that his request for "weight and vital checks . . . was denied by a

doctor named 'Harewomb.'"  Dkt. No. 12 at ECF p. 13.

      Defendants have not moved to dismiss plaintiff's complaint  to the extent that it asserts

claims against Doctor "Harewomb."  They assert that "Harewomb is not a [C]ommonwealth

employee and [was] unrepresented at the time of" their motion.  Dkt. No. 21 at ECF p. 21, n.6.

The summons for Doctor "Harewomb" was returned unexecuted on September 8, 2015.  Dkt.

No. 23.  Pursuant to Federal Rule of Civil Procedure 4(m), plaintiff has 120 days from the filing

of his complaint to serve process on a defendant.  See Fed. R. Civ. P. 4(m).  Plaintiff has not

requested an extension of time to execute service of process on Doctor Harewomb and has not

shown good cause for his delay.  Thus, I will dismiss plaintiff's claims against Doctor Harewomb

without prejudice to plaintiff's refiling of his complaint against the doctor.  See MCI

Telecomms. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1096 (3d Cir. 1995) (the district court

must allow for extensions of time under Rule 4(m) where good cause for delay has been shown,

but absent a showing of good cause the district court's decision to dismiss a case without

prejudice or to extend time of service is discretionary), citing Petrucelli v. Bohringer &

Ratzinger, 46 F.3d 1298, 1305 (3d Cir. 1995).

To the extent that Claim 2 in plaintiff's second amended complaint implicates any other defendant, it will be dismissed for failure to state a claim, as plaintiff has not alleged sufficient facts to show that any other defendant had the requisite personal involvement in the alleged denial of access to medical care.

### C.    Legal Mail

Defendants construe plaintiff's claim that they tampered with his mail as a claim for denial of access to the courts. Dkt. No. 21 at ECF p. 24. They argue that plaintiff's second amended complaint is insufficient to state a viable access to the courts claim because he has not shown that he suffered an actual injury[8] as a result of defendants' alleged conduct. Id. at ECF p. 25. Plaintiff responds that his claim with respect to his legal mail "does not attempt to make an access to the courts claim, rather [it] is a first amendment tampering with priv[i]leged correspond[e]nces claim." Dkt. No. 22 at ECF p. 18. He contends that "privileged mail may not be read in the course of ordinary prison routine . . . " and that "it is well established in law practice that such actions violate the first amendment." Id. at ECF p. 19.

Considering plaintiff's response, I will construe plaintiff's mail tampering claim as a claim for retaliation under the First Amendment. To withstand defendants' motion, he must allege:  (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from the exercise of constitutional rights; and (3) a causal link between the exercise of a constitutional rights and the adverse action. DeFranco v. Wolfe,

---

[8]    To establish an access to the courts claim, plaintiff must plead facts showing "that the denial of access caused actual injury; for instance, that he was prevented from asserting a 'nonfrivolous' and 'arguable' claim." Tapp v. Proto, 404 F. App'x 563, 566 (3d Cir. 2010), citing Christopher v. Harbury, 536 U.S. 403, 415 (2002). Plaintiff has not pled any facts to support a plausible claim that defendants' actions restricted ability to assert an arguable claim in court.

387 F. App'x 147, 154 (3d Cir. 2010).  Regardless of whether plaintiff has alleged a pattern and

practice of mail tampering which might be sufficient to deter a person of ordinary firmness from

the exercise of his constitutional rights, his claim is insufficient to state a First Amendment

retaliation claim against defendants because he has not sufficiently alleged that any individual

defendant participated in the alleged mail tampering.  Plaintiff claims only generally that "prison

officials began to hold my outgoing legal mail" and that "several p[ie]ces of mail . . . have been

opened by staff," and that "someone in the mail room" had written names on his mail.  Dkt. No.

12 at ECF p. 14.  He does not specifically name any defendants in conjunction with his claim

that his mail has been tampered with.  Plaintiff's allegations are not enough and I will dismiss his

mail tampering claim with leave to amend to the extent that he is able to sufficiently allege facts

that the defendants were personally involved in the alleged tampering with his mail.

### D.   Excessive Force

In their motion to dismiss, defendants do not specifically raise the issue of whether

plaintiff's allegations in claim 4 are sufficient to state a claim under Rule 12(b)(6).  However,

because plaintiff is a prisoner proceeding in forma pauperis, I may sua sponte dismiss any claim

that fails to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915(e)(2)(B) ("the

court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state

a claim on which relief may be granted").

Plaintiff does not identify any specific defendant in the body of his second amended

complaint with respect to his claim regarding the alleged use of excessive force.  See Dkt. No. 12

at ECF p. 14 ("I was attacked by several guards in riot gear"; "at least four guards began to kick,

strike, pull, push and neat me . . . . "; "an officer twisted my wrists . . . ").  Without more, these

allegations are not sufficient to state a claim against any defendant under 42 U.S.C. § 1983 as

plaintiff has not alleged sufficient facts to show that any particular defendant had the requisite personal involvement in the alleged use of excessive force.[9]   Accordingly, I will dismiss claim 4 of plaintiff's second amended complaint with leave to amend to the extent that he is able to sufficiently allege that any defendant was personally involved in the alleged use of excessive force.

An appropriate Order follows.[10]

---

[9]   In a letter attached to his second amended complaint, plaintiff appears to claim that a C.O. Privott and Sergeant Book grabbed him, forced him to the medical lobby, and assaulted him.  Dkt. No. 12 at ECF p. 40.  But the letter cannot save plaintiff's claim 4 from dismissal, as neither Book nor Privott have been named as defendants in this action.

[10]   Should plaintiff choose to amend his claims, defendants will be permitted to raise the issue of exhaustion in a properly supported motion for summary judgment at the appropriate time.  See Breeland, 439 F. App'x at 96.